888 P.2d 381

**Thomas D. FIGUEROA,**
**Claimant–Appellant,**

v.

**ASARCO, INC., Employer and American**
**Smelting & Refining Company, Surety,**
**Defendants–Respondents.**

No. 20879.

Supreme Court of Idaho,
Coeur D'Alene, October 1994 Term.

Jan. 6, 1995.

Bennett & Ireland, P.A., Coeur d'Alene, for appellant.

Hull, Hull & Branstetter, Wallace, for respondents.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

The claimant, Thomas D. Figueroa (Figueroa), injured his right knee on January 28, 1986, while working for Asarco, Inc. (Asarco) at the Galena Mine in Shoshone County. Figueroa was paid $4,690.03 in total temporary disability benefits from the time of his injury until he returned to work on July 1, 1986.

On January 27, 1987, Asarco's Wallace, Idaho office received a letter from John K. Pike, M.D., a Coeur d'Alene orthopedic surgeon, stating that Figueroa sustained a 5 percent impairment of his right leg as a result of the industrial injury. This information was not provided to Figueroa and Asarco took no action based on the rating. Elmer Matilla, Asarco's personnel administrator (Matilla), testified at the hearing on this matter before an Industrial Commission Referee (the Referee), that Asarco's failure to take any action in response to the impairment rating was due to a change of administrative personnel at the time in question. At the hearing, Matilla candidly admitted that Figueroa's impairment rating got "lost in the shuffle."

On May 14, 1987, Asarco made the last medical payment relating to Figueroa's injury. Figueroa terminated his employment with Asarco on January 6, 1988. At that time, he still had not received Dr. Pike's impairment rating from Asarco, nor any additional income benefits related to that rating.

On February 5, 1988, Matilla spoke with Marilyn Salter at the Industrial Commission (the Commission). Salter informed Matilla that the Commission wanted to close Figueroa's file, and told him that Asarco had to pay Figueroa's impairment rating. Matilla assured Salter that Asarco would pay the impairment rating as soon as he found out where Figueroa was living.

Although Figueroa moved frequently during and after his employment with Asarco, he provided the Galena mine office with his family's permanent postal address in Pinehurst, Idaho. Figueroa received at least one item from a mass mailing by Asarco at the Pinehurst address following his termination of employment. However, Matilla testified that he did not want to send a check to Figueroa's family address in Pinehurst because he did not want to mail a negotiable instrument to what he believed was an invalid address. In the meantime, Matilla re-

served the money due and owing Figueroa from 1988 through July of 1992, by placing it in a pool along with money for other pending workers' compensation awards.

On June 8, 1992, Figueroa initiated a telephone call to Asarco that resulted in a conversation with Matilla on June 9. At that time, Figueroa requested information regarding his retirement rights and impairment rating. Two days later, on June 11, 1992, Matilla mailed Figueroa a copy of Dr. Pike's rating, along with a check in the amount of $1,644.50, as payment in full, without interest, for Figueroa's permanent partial impairment.

On August 12, 1992, Figueroa filed an application for a hearing before the Commission, alleging that he was entitled to additional Workers' Compensation benefits related to the January 1986 accident. On January 25, 1993, Asarco filed a Motion to Dismiss Figueroa's claim, arguing that it is time-barred under I.C. § 72–706(2).[1]

Following a hearing on March 10, 1993, the Referee entered a Proposed Order on July 28, 1993, granting Asarco's motion to dismiss, while retaining jurisdiction to determine whether Figueroa is entitled to additional medical benefits pursuant to I.C. § 72–432. The Referee based its conclusion that Figueroa's application for a hearing on his claim for additional income benefits is time-barred pursuant to I.C. § 72–706(2) on this Court's ruling in *Walters v. Blincoe's Magic Valley Packing Co.*, 117 Idaho 239, 787 P.2d 225 (1990).

The Referee's Findings of Fact, Conclusions of Law, and Proposed Order was adopted in its entirety by the Commission on July 28, 1993.

## ANALYSIS

### I. The Industrial Commission correctly discerned that the Fifth Anniversary Rule announced in *Walters* is controlling.

Figueroa contends that Asarco's dilatory conduct takes the facts of this case outside the Fifth Anniversary Rule announced in *Walters*. This argument is not persuasive, as workers' compensation is purely a statutory creation.

In *Walters*, we held that the language of I.C. § 72–706(2) that allows the filing of an application for a hearing within one year of the last payment of compensation "if compensation is discontinued more than five (5) years from the date of the accident causing the injury," necessarily implies that compensation was being paid on the fifth anniversary of the accident and was thereafter discontinued. *Id.* at 242, 787 P.2d at 228. Consequently, the statute's one-year extension for filing hearing applications does not apply if no compensation was being paid on the fifth anniversary of a claimant's injury-causing accident. In the instant case, no compensation was being paid on the fifth anniversary of Figueroa's injury. Thus, *Walters* is controlling.

### CONCLUSION

Because the Industrial Commission correctly ruled that the Fifth Anniversary Rule announced in *Walters* is controlling, we affirm its ruling. Costs are awarded to ASARCO.

JOHNSON, TROUT, and SILAK, JJ., and WOODLAND, J. Pro Tem., concur.

---

1. The Referee concluded, under *Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P.2d 408 (1969), that the 1978 version of the statute controlled:

   **Limitation on time on application for hearing.—**

   . . . .

   (2) When compensation discontinued. When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury or date of first manifestation of an occupational disease, *or, if compensation is discontinued more than five (5) years from the date of the accident causing the injury or the date of first manifestation of an occupational disease, within one (1) year from the date of the last payment of compensation,* within which to make and file with the commission an application requesting a hearing for further compensation and award.

   I.C. § 72–706 (italics added).